IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIAN PAUL BRANDOLINO, BRUCE DAVID BRANDOLINO, and BRAD ALLAN BRANDOLINO, <br><br>Plaintiffs, <br><br>v. <br><br>DOUGLAS WINTER SCHLAK, d/b/a DOUGLAS W. SCHLAK & ASSOCIATES, <br><br>Defendant. | No. 19 C 0102 <br><br>Judge John Z. Lee |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Bruce, Brad, and Brian Brandolino (collectively "Plaintiffs") are brothers who held remainder interests in a parcel of land at 1301 North Cedar Road in New Lenox, Illinois ("1301 North Cedar"). They filed this lawsuit, claiming that Defendant Douglas Schlak ("Schlak") committed legal malpractice when representing them and their father, Robert R. Brandolino ("Robert"), in the sale of 1301 North Cedar to a bank in December 2005. After discovery, Schlak brought the current motion seeking summary judgment in his favor. For the following reasons, the motion is granted.

I.  **Background**[1]

1301 North Cedar was one of several parcels of commercial real estate conveyed in 1998 from a family trust to Robert as life tenant and Plaintiffs as

---

[1]  The following facts are undisputed or deemed admitted, unless otherwise noted.

remainderpersons. Pls.' Statement of Additional Facts ("PSOAF") ¶ 9, ECF No. 135. Robert decided to sell the property in 2005 and informed the brothers that he had received an offer of $1.8 million. Def.'s Statement of Facts ("DSOF") ¶ 22, ECF No. 117. Robert told them that if they would help him facilitate the transaction, he would give them each $100,000. (According to the brothers, they understood the $100,000 to be a "gift" from their father for their help with the transaction.). PSOAF ¶ 26.

Robert retained Schlak to assist him in the sale and prepare the closing documents. DSOF ¶ 6. As for the brothers, Schlak never spoke to them about the sale or advised them of their legal rights as holders of remainder interests, a term that Plaintiffs claim they did not understand at the time of the sale. PSOAF ¶ 6. In fact, none of the brothers had any contact with Schlak—or even knew his name or where to find him—until much later in 2016, when Schlak assisted the family with an unrelated matter. DSOF ¶ 55; PSOAF ¶ 20.

At Robert's behest, however, Schlak did prepare documents for the brothers to sign leading up Robert's sale of the property. These included warranty deeds, affidavits of title, and IRS Form 1099s. Schlak also drafted documents for them to sign granting Schlak power of attorney for the purpose of the sale. DSOF ¶ 35; *see generally* DSOF, Grp. Ex. 5, Plaintiffs' Closing Documents, ECF No. 117-5.

On December 22, 2005, Robert met the brothers at a bank (without Schlak) with the documents. And the brothers executed the documents that conveyed their remainder interests in preparation for the sale. PSOAF ¶ 21.

When the sale closed a week later on December 29, 2005, Schlak gave Robert three envelopes to give to the brothers; each contained a copy of the closing documents and a check for $100,000. DSOF ¶ 46. Schlak also sent copies of the closing documents to Chicago Title and Trust Company. *Id.* ¶ 45. For whatever reason, the brother received the check from Robert, *id.* ¶ 49, but not copies of the closing documents. PSOAF ¶ 37.

Robert fell seriously ill in 2017 and passed away on September 24, 2017. PSOAF ¶ 31. In May 2017, Brian discovered at Robert's home the envelopes, addressed to the brothers, that Schlak had given to Robert after the closing on December 29, 2005. *Id.* ¶¶ 17; 31. After conferring with legal counsel, the brothers discovered that the documents they signed at the December 22, 2005, meeting with Robert had conveyed their remainder interests in 1301 North Cedar, and that the $100,000 each had received from the sale proceeds was consideration for his respective conveyance. *See id.* ¶¶ 30; 33.

Believing that Robert and Schlak had deceived them into selling their remainder interests for less than fair value, the brothers filed this legal malpractice action against Schlak on January 9, 2019. DSOF ¶ 7. Schlak asserts that the lawsuit came too late and is barred by the Illinois statute of repose.

## II. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Evidence offered at summary judgment must

3

be admissible to the same extent as at trial, at least if the opposing party objects, except that testimony can be presented in the form of affidavits or transcripts of sworn testimony rather than in person." *Baines v. Walgreen Co.*, 863 F.3d 656, 662 (7th Cir. 2017). On cross motions for summary judgment, the court "view[s] the facts and draw[s] reasonable inferences in favor of 'the party against whom the motion at issue was made.'" *Woodring v. Jackson Cnty.*, 986 F.3d 979, 984 (7th Cir. 2021) (quoting *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017)).

The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party must then "come forward with specific facts showing that there is a genuine issue for trial." *LaRiviere v. Bd. of Trs. of S. Ill. Univ.*, 926 F.3d 356, 359 (7th Cir. 2019) (quoting *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015)). To satisfy that ultimate burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead must "establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor," *United States v. King-Vassel*, 728 F.3d 707, 711 (7th Cir. 2013) (cleaned up); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[S]ummary judgment will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

### III. <u>Analysis</u>

The Illinois statute of repose for legal malpractice actions provides that such actions "may not be commenced in any event more than 6 years after the date on which the act or omission [giving rise to the claim] occurred." 735 Ill. Comp. Stat. 13-214.3(b)-(c). That said, the statute of repose is tolled if the plaintiff can show by clear and convincing evidence that the defendant had fraudulently concealed the claim against him. 735 Ill. Comp. Stat. 13-215 (tolling the statute of repose "[i]f a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto"); *see, e.g.*, *DeLuna v. Burciaga*, 857 N.E.2d 229, 250 (Ill. 2006).

The issue before the Court then is whether a reasonable jury could find that Schlak fraudulently concealed Plaintiffs' right to file a malpractice suit against him between the time of the alleged malpractice in December 2005 and Plaintiffs' discovery of the envelopes in Robert's house in May 2017. This can take the form of affirmative acts and representations by Schlak, or certain conditions in the absence of any such conduct. The Court will discuss each in turn.

**A.     Fraudulent Concealment Through Affirmative Acts**

To establish fraudulent concealment via affirmative conduct, the plaintiff must prove that the defendant committed "affirmative acts or representations calculated to lull or induce [the] claimant into delaying filing of his or her claim, or to prevent [the] claimant from discovering [the] claim." *Orlak v. Loyola Univ. Health Sys.*, 885 N.E.2d 999, 1009 (Ill. 2007). In other words, the plaintiff must show that (1) the defendant committed acts or made representations that he knew were false, (2) made

5

them with the intent to deceive the plaintiff, and (3) the plaintiff detrimentally relied on such acts or representations. *Id.*; *see Manning and Silverman, Ltd. v. H&R Block Tax Servs. LLC*, No. 20 C 2609, 2020 WL 628407, at *3 (N.D. Ill. Oct. 27, 2020). Actively hiding evidence or promising not to plead the statute of limitations or repose satisfies this requirement. *See In re Honey Transshipping Litig.*, 87 F. Supp. 3d 855, 868 (N.D. Ill. 2015). But "mere silence" or failure to notify the plaintiff of their cause of action is insufficient. *Wasserstein v. Univ. of Chi.*, No. 17-cv-6567, 2018 WL 347543, at *4 (N.D. Ill. July 19, 2018) (quoting *Martin v. Consultants & Adm'rs, Inc.*, 966 F.2d 1078, 1094 (7th Cir. 1992)).

Here, the record is devoid of any evidence that Schlak affirmatively acted to conceal his alleged malpractice surrounding the sale of 1301 North Cedar. Plaintiffs point to Schlak's failure to inform them of his longstanding attorney-client relationship with Robert and the meaning of "remainder interest." But such failures to inform do not satisfy the affirmative act requirement. *Compare Orlak*, 885 N.E.2d at 1009 (failure to notify plaintiff that she should be tested for hepatitis C when requesting an HIV test was not an affirmative act), *and Wasserstein*, 2018 WL 347543, at *5 (plaintiff's claim that his employer "failed to give him sufficient details" about his retirement plan was not an affirmative act), *with In re Sulfuric Acid Antitrust Litig.*, 743 F. Supp. 2d 827, 855 (N.D. Ill. 2010) (allegations that defendants issued specific statements offering purportedly misleading, nonincriminating

6

explanations of their decisions raised a fact question on whether they fraudulently concealed plaintiffs' claim).[2]

Plaintiffs also rest on numerous references to Robert's alleged misconduct surrounding the 1301 North Cedar sale. They contend, for example, that Robert misled them about the nature of the interests they conveyed to him at the December 22, 2005, meeting, PSOAF ¶¶ 22–24, and that he presented them with only the signature pages of the closing documents at that meeting. *Id.* ¶ 27. They further contend that Robert withheld copies of the closing documents, which they claim would have alerted them to their cause of action. *Id.* ¶ 29. But none of these contentions, even if taken as true, show that Schlak fraudulently concealed Plaintiffs' cause of action. *See Zachman v. Citibank, N.A.*, 183 F. Supp. 3d 922, 924 (N.D. Ill. 2016) ("[U]nder Illinois law, the concealment to provide tolling must be done by the defendant.").

## B.    Fraudulent Concealment Absent Affirmative Acts

Even in the absence of affirmative conduct, a plaintiff can prove fraudulent concealment by "plead[ing] specific facts demonstrating [that] either (1) greater diligence would not have caused them to discover the fraud sooner; or (2) the trust and confidence they placed in [the defendant] by virtue of their relationship

---

[2]    That said, even if the Court were to construe Schlak's failure to disclose his previous attorney-client relationship with Robert as affirmative misrepresentation, this still would not establish fraudulent concealment. Plaintiffs offer no evidence that knowledge of Schlak's previous representation of Robert in a lease dispute would have alerted Plaintiffs to the existence of their malpractice claim against Schlak surrounding the sale of 1301 North Cedar.

7

prevented them from discovering the fraud any sooner." *Manning and Silverman,* 2020 WL 628407, at *3.[3]

### 1. Discovery Through Greater Diligence

Based upon this record, no reasonable jury could find that Plaintiffs would not have discovered the existence of their legal malpractice claim had they exercised reasonable diligence prior to the expiration of the statute of repose. For example, taking Plaintiffs' version of events to be true, at their December 22, 2005, meeting with Robert, the brothers were only given the signature pages of the closing documents to sign. PSOAF ¶ 27. A reasonable person would have inquired about the entire contents of the documents and why they needed to sign them. This is particularly true given that the "signature pages" contain numerous indications that they are associated with the transfer of the property. *See, e.g.,* Plaintiffs' Closing Documents at 15 (a "Chicago Title Notice Regarding Foreign Investment" designating Plaintiffs as "Seller[s]" and a bank as "Buyer"); *id.* at 5 (Warranty Deed signature page acknowledging Plaintiffs' "release and waiver of the right of homestead"). But Plaintiffs admit that they never asked any questions about these documents before

---

[3] The case law is unclear whether, in the absence of affirmative acts of concealment, the plaintiff can establish fraudulent concealment by showing *either* that greater diligence could not have uncovered the claim *or* that the failure to discover the claim was due to the plaintiff's fiduciary relationship with the defendant, or whether the plaintiff must make *both* of these showings. *Compare, e.g., Putzier v. Ace Hardware Corp.,* 50 F. Supp. 3d 964, 978–79 (N.D. Ill. 2014) (only one factor is required); *Manning and Silverman,* 2020 WL 628407, at *3 (same), *with, e.g., Clark v. Robert W. Baird Co., Inc.,* 152 F. Supp. 2d 1040, 1044 (N.D. Ill. 2001) (holding, in applying section 13-215, that "a fiduciary relationship does not eliminate the plaintiff's duty to investigate wrongdoing"); *Guarantee Tr. Life Ins. Co. v. Kribbe,* 68 N.E.3d 1046, 1057 (Ill. App. Ct. 2016) (same). It does not matter for present purposes, since Plaintiffs cannot show a genuine factual dispute as to either factor.

signing them. *See* Def.'s Mem., Ex. 1, Bruce Brandolino Dep. at 16:13–19, ECF No. 117-1; Ex. 2, Brad Brandolino Dep. at 24:23–25:12, ECF No. 117-2; Ex. 3, Brian Brandolino Dep. at 48:22–49:21, ECF No. 177-3. This was despite the fact that all three Plaintiffs are sophisticated businesspeople, two of whom possess graduate degrees in business and have experience in residential real estate sales. *See* Bruce Brandolino Dep. at 5:14–7:19; Brad Brandolino Dep. at 5:23–8:22; Brian Brandolino Dep. at 6:24–12:20*; see also Shropshear v. Corp. Counsel of City of Chi.*, 275 F.3d 593, 595 (7th Cir. 2001) (plaintiff could not prove fraudulent concealment because he failed to inquire about whether his complaint had been filed).

Plaintiffs also argue that Schlak fraudulently concealed copies of the closing documents by not providing them with the documents. But this too is unpersuasive. Plaintiffs acknowledge that they never asked Schlak to give them copies of the documents, nor did they ask Schlak about the documents' contents. *See* Brian Brandolino Dep. at 52:21–53:7; Brad Brandolino Dep. at 26:8-12; Bruce Brandolino Dep. at 32:2-5. What is more, it is undisputed that the envelopes Schlak provided to Robert (which, by the way, were addressed to each brother) contained all of the documents. And at least one of the brothers knew that Robert had copies of the closing documents and had asked Robert on numerous occasions in the years following the sale for copies of them, to no avail. *See* Brian Brandolino Dep. at 60:4–61:17. Furthermore, none of the brothers claim to have requested copies of the documents from Chicago Title, nor did any of them search the registry of deeds, which would have referred to some of them. *See, e.g.*, Plaintiffs' Closing Documents at 2–5;

9

*Credit Suisse Sec. (USA) LLC v. Simmonds*, 566 U.S. 221, 227 (2012) (fraudulent concealment only tolls a statute of limitations "where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part" (emphasis omitted) (quoting *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991))); *Shropshear*, 275 F.3d at 595 (plaintiff who failed to contact his lawyer about the status of his putative claim did not exercise due diligence); *McIntosh v. Cueto*, 752 N.E.2d 640, 645 (Ill. App. Ct. 2001) (rejecting plaintiffs' invocation of common-law equitable estoppel on grounds that they could have discovered the allegedly concealed information by searching public court records); *Dancor Int'l, Ltd. v. Friedman, Goldberg & Mintz*, 681 N.E.2d 617, 624 (Ill. App. Ct. 1997) (fraudulent concealment did not apply because readily accessible records would have alerted the plaintiff to its cause of action).

In short, the record is devoid of any evidence that Plaintiffs could not have discovered their claim if they had exercised more diligence than they did.

### 2. Fraudulent Concealment Based On Fiduciary Relationship

Plaintiffs still can benefit from tolling if they can prove the existence of a fiduciary relationship between them and Schlak and a causal link between Schlak's execution of any fiduciary duty and Plaintiffs' failure to discover the claim. *See Hagney v. Lopeman*, 590 N.E.2d 466, 469 (Ill. 1992) ("[T]o excuse diligence in discovering the fraud, the plaintiff must attribute the failure to discover to the trust and confidence placed in the fiduciary."). No such facts exist here.

Indeed, Plaintiffs state that they did not even know Schlak's name or contact information until 2016. PSOAF ¶ 20. Therefore, even assuming that Plaintiffs did have a fiduciary relationship with Schlak when they signed the documents on December 22 (which Defendants do not contest for the purposes of this motion, *see* Def. Repl. Supp. Mot. Summ. J. at 6, ECF No. 137) no reasonable jury could conclude that Plaintiffs interaction with Schlak was sufficient to trigger the doctrine of fraudulent concealment. *Barratt v. Goldberg* is instructive. 694 N.E.2d 604 (Ill. App. Ct. 1998), *appeal denied*, 705 N.E.2d 433 (Table) (Ill. 1998). In that case, the plaintiff sued her lawyer for legal malpractice because the lawyer had advised her to accept a grossly inadequate settlement offer. *Id.* at 606. Her claim fell outside the statute of limitations, but she argued that the fraudulent concealment doctrine applied because of her fiduciary relationship with the lawyer. *See id.* at 608–09. The court held that fraudulent concealment did not apply because the plaintiff had no contact with her attorney after the settlement, so her failure to file was not caused by her trust in him. *Id.* at 609. The ties between Plaintiffs and Schlak are even weaker than those in *Barratt*, where the plaintiff at least knew who her attorney was and had *some* degree of contact with him. *See id.* at 608–09.

Lastly, Plaintiffs argue that, as their attorney, Schlak should have informed them of the nature of their remainder rights and the conflict-of-interest that might arise between them and their father when it came to selling the property. As Plaintiffs see it, Schlak's failure to do so constitutes fraudulent concealment. But these same facts also form the basis of Plaintiffs' malpractice claim and, under Illinois

11

law, Plaintiffs cannot rely on them to establish fraudulent concealment. "[T]here is a well-established rule that the basis of the legal malpractice action also cannot constitute the grounds for [fraudulent concealment]." *Koczor v. Melnyk*, 944 N.E.2d 345, 351 (Ill. App. Ct. 2011); *see also Shropshear*, 275 F.3d at 595 (the acts establishing fraudulent concealment must be "above and beyond the wrongdoing upon which the plaintiff's claim is founded").

## IV. Conclusion

For the foregoing reasons, the Court concludes that no reasonable jury would find that Plaintiffs' claims were tolled by the doctrine of fraudulent concealment. As such, the claims are barred by the Illinois statute of repose, and the Court grants Defendant's motion for summary judgment and enters judgment in Defendant's favor.

**IT IS SO ORDERED.**  ENTERED: 3/1/22

_____
**John Z. Lee**
**United States District Judge**